**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA**,** | : | CASE NO. 5:18-CR-608 |
| Plaintiff, | : : | |
| | : | CHIEF JUDGE PATRICIA A. GAUGHAN |
| vs. | : : | |
| LARRY SOWELL, | : | **SENTENCING MEMORANDUM** |
| | : | **FOR LARRY SOWELL** |
| Defendant. | : | |

Defendant Larry Sowell, through undersigned counsel, submits the instant Sentencing Memorandum for the Court's consideration and requests a sentence, as calculated and reviewed pursuant to Title 18, United States Code §§ 3553(a) and 3661, that is sufficient but not greater than necessary to achieve the statutory goals of sentencing. Counsel attaches the following Memorandum to assist the Court in fashioning Mr. Sowell's sentence.

                                                            Respectfully submitted,

                                                            STEPHEN C. NEWMAN
                                                            Federal Public Defender
                                                            Ohio Bar: 0051928

                                                            */s/ Jeffrey B. Lazarus*
                                                           JEFFREY B. LAZARUS
                                                            Assistant Federal Public Defender
                                                            Ohio Bar: 0079525
                                                           1660 W. 2nd Street, Suite 750
                                                           Cleveland, Ohio 44113
                                                           Telephone: (216) 522-4856
                                                           Facsimile: (216) 522-4321
                                                           jeffrey_lazarus@fd.org

                                                           Attorney for Larry Sowell

## **MEMORANDUM**

**I.      Introduction**

Defendant Larry Sowell now appears for sentencing after having pled guilty to an offense involving drugs and firearms. As properly calculated by the presentence report, his sentencing guideline range for Counts One, Two, and Four is 37 to 46 months at total offense level 17, Criminal History Category IV. He also has a 60-month mandatory and consecutive sentence for his offense in Count Three, under 18 U.S.C. § 924(c)(1)(A)(i). Based on several mitigating factors, which include Mr. Sowell's personal history, his employment history, and his skills as a father, he asks this Court to impose a total sentence of 72 months, that being 60 months on Count Three, and a consecutive 12 months for the remaining offenses. Such a sentence is sufficient but not greater than necessary to achieve the statutory sentencing factors set forth in 18 U.S.C. § 3553(a).

**II.     The Offense and Mr. Sowell's Acceptance of Responsibility**

As detailed in the presentence report, Larry Sowell (herein referred to as "Larry"), has a criminal history dating back to the age of sixteen. Larry does not deny his prior offenses, and wants this Court to know many of them were motivated by a severe drug habit. In 2007, he was given a six-year prison sentence for a drug case out of Summit County (PSR at ¶ 65). He served his time and was released in 2013. Since his release six years ago, Larry has been diligently working in construction. He was working very hard in order to make a living for himself, working forty hours a week and sometimes working up to sixty hours a week. He was providing both financial and emotional support for his children and was happy with the relationship he was building with them.

While he was meeting many of his obligations at work and home, Larry was still struggling with a drugs and continued to use crack cocaine. Being in the urban part of Akron, and being in the construction industry, Larry witnessed much violence. He and his family had repeatedly been in the victims of robberies, burglaries, and other violent acts. This ever-present violence worried Larry about his safety, and he kept a gun in his car for protection.

On August 6, 2018, Larry and his oldest son were driving in the Akron area. Larry was on his way to his visit his insurance agent, Daniel Johnson. Akron police officers pulled him over for a traffic violation, in which he complied. During the stop, officers smelled marijuana and asked to search the vehicle. Larry and his son agreed, and were removed from the car. Officers found Larry's crack cocaine in the center console, along with a gun. Larry was arrested and charged in the instant case.

On March 5, 2019, Larry appeared before this Court and pled guilty to all four counts of the indictment. In pleading guilty, Larry agreed to the factual basis set forth by the government, and provided a lengthy and introspective statement to the probation officer during his presentence interview accepting responsibility for his offense. Dkt. 14, Presentence Report, ¶¶ 13-21.

### III. Applicable Legal Standards

In *Kimbrough v. United States*, 552 U.S. 85 (2007), the United States Supreme Court reaffirmed the framework for Courts fashioning a defendant's sentence. Under *Kimbrough*, Courts must treat the Guidelines as the "starting point and the initial benchmark" when formulating a reasonable sentence. *Id.* However, the Guidelines are instead merely the starting point for a nuanced assessment of each individual case and the appropriateness of the Guidelines sentence must be judged against the other factors in 18 U.S.C. § 3553(a). *Id.* While the statute

still requires a court to give respectful consideration to the Guidelines, the court must tailor the sentence in light of the other factors in § 3553(a) as well. *Booker v. United States*, 543 U.S. 220, 245-246 (2005).

The totality of these factors promotes a "holistic" sentence which may result in sentences lower than those previously calculated under a mandatory guideline scheme because the possible sentencing range no longer prohibits courts from considering any specific factor. Another crucial statutory sentencing authority is 18 U.S.C. § 3661, entitled "Use of information for sentencing." This provision also emphasizes a holistic sentencing approach, stating:

> No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence.

18 U.S.C § 3661. In applying the 18 U.S.C. § 3553(a) sentencing factors and these legal standards, there is ample support for the conclusion that Larry Sowell warrants a sentence below his sentencing guideline range, and requests this Court impose a total sentence of 72 months.

**IV.     Larry Sowell's personal history and characteristics**

Larry Sowell is a 43-year-old man who was born in Cleveland and has lived his whole life in Northeast Ohio. Larry was primarily raised by his mother and had very little contact with his father growing up. Larry states that he and his father had "no real relationship" as his father had a severe crack addiction throughout the 1980s and suffered from a number of mental health issues.

Larry's mother held a steady job, working for a children's psychiatric hospital in Sagamore Hills, but struggled with her own substance abuse issues. From the time Larry was born, until he was nine years old, his mother abused cocaine, alcohol, and pills. Larry's parents were not the only members of the family to abuse drugs, as many of Larry's extended family also

had drug habits and mental health issues. However, due to the severity of his mother's habit, Larry frequently stayed at his grandparents' home in the King-Kennedy projects. In fact, from his birth until age five, Larry only remembers living at his grandparents' home. From age five to eight, he went back to his mother's home. Over these three years, his mother still abused drugs, but was able to provide Larry with his basic needs.

When Larry was eight years old, his mother tried to commit suicide. She remained in the hospital for a week, and shortly after being released, she went on a bender, in which she drove while intoxicated and hit a lady with her car. This event had a significant effect on his mother, and was the impetus for her getting sober. In the process of getting sober, his mother realized that she was a lesbian, and began a new life out of the closet. Although Larry was happy that his mother was clean and becoming happier with the person she was, it left very little time for her to properly care for her son. Larry was frequently left on his own and unsupervised. They lived in the projects of Cleveland, and at a young age Larry was exposed to drugs, violence, and gangs. He was even the victim of sexual abuse on several occasions. PSR at ¶ 90.

In the wake of his mother's newfound lifestyle and sobriety, she decided to try for a fresh start by moving out of the Cleveland projects to the Akron area. They found a home in Fairlawn, which had very few minorities. Larry felt very alone. His mother's sexual orientation was hard for him to cope with, and he was uncomfortable with how others reacted to her lifestyle. Larry was also in a new and unfamiliar setting, being one of a few black people at his new school. He also continued to struggle with some of the traumas of his upbringing and being a victim of sexual abuse. Larry, however, was not provided any steady counseling or support to address these issues. Instead, Larry became an introvert and found his only outlet for relief was playing sports.

5

Larry struggled in school, but was able to maintain passing grades so he could play high school sports. He began to excel in sports and made the school team in four sports – baseball, football, wrestling, and basketball. As he got older, he drew interest from colleges to play sports and possibly receive a scholarship. However, all these hopes and dreams were cancelled when Larry began to run with the wrong crowd and got arrested for juvenile offenses. PSR at ¶¶ 36-39. Instead of going to college, Larry was sent to juvenile prison, the Ohio Department of Youth Services.

Larry knows that he had an opportunity to play college football and further his education and life, but made poor choices that took him the wrong direction. He has significant regret about these squandered opportunities, but feels he lacked the guidance or support system to make the right choices. While he was able to graduate from high school, he had no job opportunities when school was completed. He was very angry about losing out on college and playing football, and his anger turned to depression. He began using drugs, and then started selling drugs in order to pay for his habit. This began ten-year cycle for Larry that included drug use, crime, and prison sentences, all of which are detailed in the presentence report. From age nineteen until age thirty-two Larry was abusing crack daily. He was not really working, but was struggling with a crack habit that included selling drugs and committing other crimes in order to pay for his habit.

This tragic cycle of evens culminated in 2007, at age 32, when the Summit County Court of Common Pleas sentenced him to six years in prison for a cocaine possession offense. PSR at ¶ 65. While serving this sentence, Larry took a long hard look at the person he had become. He had wasted all of his twenties, and had five young children. He did not want to be like his father and have no relationship with his children. He wanted to be able to provide for them financially, and be a positive role model for them. While in the Ohio prison, he took as many educational

courses he could to see if there was something that sparked his interest. He ended up thoroughly enjoying courses in construction, carpentry, and home remodeling. He began to study as much in these areas as he could. He also learned tips and skills from other inmates who had experience in this field. He dedicated himself to starting a career in home rehabilitation upon his release.

After his six-year sentence ended in 2013, Larry returned home to Akron, and immediately began to work towards achieving his employment goals. He began by doing landscaping work in the area, and did whatever he could to make business contacts. He saved his money in order to buy the tools he needed to branch out into construction and home repair work. Larry was very committed to his goal, and was working between 50 and 60 hours a week most weeks. He developed his skills in carpentry, drywall, plumbing, heating and cooling systems (HVAC), and other home rehabilitation skills. He began to get clients and secure jobs that paid him enough money that he could financial support his children. Larry's statement to this Court details his passion and dedication to his job. PSR at ¶ 17. He was on post-release control to the state, with no violations. He even enrolled in Vatterott College in Broadview Heights to obtain his degree his building maintenance. He was still struggling with his sobriety, but his work demands usually kept him occupied enough that he was not thinking about using.

From 2013 through 2018, Larry was doing well and staying out of any trouble. The Akron area, however, led to problems. Larry found the Akron area to be swarming with gangs and violence, and that people with guns were seen all over. While doing home rehab jobs in the city of Akron, Larry has been attacked, robbed, and had a gun pulled on him several times. Larry had great fear about his safety, especially while on the job. In fact, both Larry's son and grandson were the victim were robbed at gunpoint, in which the robber put a gun to both of their heads. Further, while Larry has been in pre-trial detention on this case, his son, Million, was shot

in the arm on the streets of Akron. Larry, out of fear for his safety and safety of his family, acquired a gun for protection. He kept the gun in his car just in case someone tried to attack or rob him again. It is these circumstances that led to his offense on August 6, 2018.  Larry is very sorry for breaking the law by illegally possessing this gun and these drugs, but he wants this Court to understand the circumstances that led to this offense. He had no intention of using the gun in any way. He also wants the Court to understand the progress he was making since 2013 as it relates to his employment and to his family.

## V.     A sentence of 72 months is warranted and justified

Given the foregoing personal history and his recent employment history, a sentence below guideline range is justified under the § 3553(a) factors. His guideline range is 37 to 46 months, plus a mandatory and consecutive 60-month sentence for Count Three, for a total of 97 to 106 months. While Larry's offense is serious, his work history since 2013 is commendable, and he has demonstrated to this Court that he can be a productive and contributing member of society, which mitigates his sentence.

In fashioning a sentence under the § 3553(a) factors, a court can consider a defendant's work history as a mitigating factor. *See e.g., United States v. Davis*, 406 F. App'x 52 (7th Cir. 2010) (upholding below-guideline sentence as reasonable, in part, due to defendant's long history of steady employment); *United States v. Taylor*, 280 F. App'x 397 (5th Cir. 2008) (affirming sentence of 60 months imprisonment where defendant pleaded guilty to child pornography, despite the guideline sentencing range of 235-293 months, in part, due to defendant's "impressive employment history"); *United States v. Ruff*, 535 F.3d 999 (9th Cir. 2008) (finding defendant's sentence of probation for embezzlement reasonable, in part, because of defendant's history of strong employment, despite the guideline sentencing range of 30 to 37

months); *United States v. Thompson*, 74 F. Supp. 2d 69 (D. Mass. 1999) (granting departure from guideline range in drug-distribution case warranted because "not only did defendant exhibit a sustained commitment to his family dating back to the instant he became a father, he consistently worked to provide for them"), reversed on other grounds, 234 F.3d 74 (1st Cir. 2000); *United States v. Jones*, 258 F.3d 492 (10th Cir. 1998) (departing downward by three levels where defendant pleaded guilty to possession of a firearm after considering defendant's "long impressive work history"); *United States v. Alba*, 933 F.2d 117 (2d Cir. 1991) (granting a downward variance in a drug-distribution case based on long-standing employment); *United States v. Big Crow*, 898 F.2d 1326 (8th Cir. 1990) (considering defendant's excellent employment record when sentencing in an assault-with-a-deadly weapon case). Consistent with these cases, this Court should grant Larry a downward variance based on his consistent work history over the last six years.

      He also asks this Court to consider, as a mitigating factor, the circumstances of his youth. As detailed above, Larry's father had no role in his life. While his mother cared for him, she was distracted by her own substance abuse and personal issues. This led to Larry having little parental supervision, being exposed to negative influences at an early age, and being the victim of sexual abuse. This also led to the lack of opportunities for advancement. Such a disadvantaged background and lack of guidance as a youth is an appropriate consideration in fashioning a sentence under § 3553(a). *See e.g. United States v. Walter*, 256 F.3d 891 (9th Cir. 2001) (district court downward departed because combination of brutal beatings by defendant's father, the introduction to drugs and alcohol by his mother, and, most seriously, the sexual abuse defendant faced at the hands of his cousin, constituted the type of circumstances justifying consideration of the psychological effects of childhood abuse); *United States v. Brown*, 985 F.2d 478 (9th Cir.

1993) (defendant received downward departure after offering a letter recounting his childhood of severe abuse and neglect and produced psychologist's report concluding that childhood trauma was the primary cause of his criminal behavior); *Motley v. Collins*, 3 F.3d 781, 792 (5th Cir. 1993) (the Court held "[it] requires no citation of authority to assert that children who are abused in their youth generally face extraordinary problems developing into responsible, productive, citizens"); *United States v. Ayers*, 971 F.Supp. 1197 (N.D.Ill. 1997) (departure granted based upon cruel childhood with relentless physical, sexual and psychological abuse over course of years); *Landrigan v. Schriro*, 441 F.3d 638, 648 (9th Cir. 2006) ("Where a defendant's crime is attributable to a disadvantaged background or emotional or mental problems the defendant is less culpable than one without the excuse."). Based on such considerations, Larry requests this Court impose a downward departure from his sentencing guideline range.

Lastly, Larry asks this Court to consider the attached letters of support written by his friends and family. Attached to this memorandum as Exhibit A1 through A6 are six letters of support. The first letter is written by Daniel Johnson, the insurance agent Larry was going to visit on the date of his arrest. Mr. Johnson has known Larry for years, and has advised Larry on several ways to run his home rehab business. Mr. Johnson details that Larry has been a dedicated worker and father, and has been seeking advice from Mr. Johnson on how to become a better father and man. Ex. A1. The next letter is written by Danny Ehmer, who was acting as a financial advisor for Larry. Mr. Ehmer also details Larry's dedication to his children and his craft, and his desire to improve himself. Ex. A2.

The next letter is written by Takojia Walters, Larry's girlfriend. While the two have been in a relationship for a few years, they have known each other for over twenty years. Takojia speaks very highly of Larry's skills in both his work and as a father. Ex. A3. She also gives some

insight into Larry's desire to improve himself and those around him. The next letter is written by Jeanette Sowell, Larry's mother. She provides insight into Larry's upbringing and the struggles she had in her life. The next two letters are written by Larry's two oldest sons, Jamontye and Kemp. Both are adults, but detail how much they rely on their father for support and advice, and that he has been a positive role model for them. Ex. A5, A6.

These letters all detail that Larry has been a kind and caring father to his children, and a dedicated and passionate worker who took great care in his craft. He requests this Court consider these letters in fashioning his sentence.

## VI. Conclusion

Considering all the mitigation set forth in this memorandum, together with Larry Sowell's allocution at his sentencing hearing, a below-guideline sentence is warranted and he asks this Court to impose a total sentence of 72 months, which is sufficient and satisfies the statutory sentencing factors set forth in 18 U.S.C. § 3553(a).

                        Respectfully submitted,

                        STEPHEN C. NEWMAN
                        Federal Public Defender
                        Ohio Bar: 0051928

                        */s/ Jeffrey B. Lazarus*
                        JEFFREY B. LAZARUS
                        Assistant Federal Public Defender
                        1660 W. 2nd Street
                        Skylight Office Tower, Suite 750
                        Cleveland, Ohio 44113
                        Telephone: (216) 522-4856; Fax: (216) 522-4321
                        E-Mail: jeffrey_lazarus@fd.org

                        Attorney for Larry Sowell

## **CERTIFICATE OF SERVICE**

I hereby certify that on June 19, 2019 a copy of the foregoing Sentencing Memorandum was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic receipt. All other parties will be served by regular U.S. Mail. Parties may access this filing through the Court's system.

*/s/ Jeffrey B. Lazarus*
JEFFREY B. LAZARUS
Assistant Federal Public Defender